**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**ALFRED J. GOLDEN, JR.,**

    Plaintiff,                               Case No. 1:18-cv-24414-DPG

vs.                                          JURY TRIAL DEMANDED

**UNIVERSITY OF MIAMI, a Florida not-for profit corporation,**

    Defendant.

---------------------------------------------------------

**UNIVERSITY OF MIAMI, a Florida not-for-profit corporation,**

    Counter-Plaintiff,

vs.

**ALFRED J. GOLDEN, JR.,**

    Counter Defendant.

_____/

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

      Defendant/Counter-Plaintiff, University of Miami (the "University"), by and through undersigned counsel, hereby answers the Complaint (D.E. 1) filed by Plaintiff, Alfred J. Golden, Jr. ("Golden"), asserts affirmative defenses thereto and counterclaims against Counter-Defendant, Golden, as follows:

**ANSWER**

      The University answers the Complaint in correspondingly-numbered paragraphs as follows. All allegations not expressly admitted below are hereby denied.

## **GENERAL ALLEGATIONS**

1. The University admits that this action purports to seek damages in excess of $75,000 but denies any liability for the alleged damages.

2. The University admits the allegation in this paragraph.

3. The University is without knowledge regarding the allegations in this paragraph and, therefore, denies same.

4. The University is without knowledge regarding the allegations in this paragraph and, therefore, denies same.

5. The University admits that Golden formerly was a University employee in Miami-Dade County, that venue properly is laid in the Miami-Dade Division of the United States District Court for the Southern District of Florida and that the University is located in Miami-Dade County. However, the University denies that it breached the employment agreement with Golden or that any of the alleged acts occurred.

6. The University admits that Golden purports to allege a breach of contract claim but denies that any such breach occurred.

7. The University admits that venue is proper in Miami-Dade County, Florida, but denies that any of the acts complained of ever occurred.

8. The University denies the allegations set forth in this paragraph.

9. The University admits the allegation in this paragraph.

## **FACTUAL ALLEGATIONS**

10. The University admits the allegation in this paragraph.

11. The University admits the allegation in this paragraph.

12. The University admits that it entered into an employment agreement with Golden, asserts that the agreement speaks for itself, and denies any remaining allegations inconsistent therewith.

13. The University admits that it entered into an employment agreement with Golden, asserts that the agreement speaks for itself, and denies any remaining allegations inconsistent therewith.

14. The University denies the allegations in this paragraph.

15. The University admits that it entered into an employment agreement with Golden, asserts that the agreement speaks for itself, and denies any remaining allegations inconsistent therewith.

16. The University admits that it entered into a Second Amendment to Golden's employment agreement, asserts that the agreement, as amended, speaks for itself, and denies any remaining allegations inconsistent therewith.

17. The University admits that the employment agreement was further amended, asserts that the agreement, as amended, speaks for itself, and denies any remaining allegations inconsistent therewith.

18. University admits the allegation in this paragraph.

19. The University denies the allegation in this paragraph.

## COUNT I
## BREACH OF CONTRACT

20. The University reasserts and incorporates by reference its responses to paragraphs 1 through 19 above as through fully set forth herein.

21. The University denies the allegations set forth in this paragraph.

22. The University denies the allegations set forth in this paragraph.

WHEREFORE, the University denies that Plaintiff is entitled to any of the relief he seeks in his Complaint and the University requests that judgment be entered in its favor against Plaintiff and that the University be awarded its reasonable costs and attorneys' fees in accordance with applicable law, along with such other and further relief as the Court deems just and appropriate under the circumstances.

## **AFFIRMATIVE DEFENSES**

For its affirmative defenses, the University asserts the following:

1. As its First Affirmative Defense, the University states that Golden fails state a claim for breach of contract. The University has fully complied with its obligations under the Agreement. Thus, the University has not materially breached the Agreement and Golden has not suffered any damages.

2. As its Second Affirmative Defense, the University states that Golden's interpretation of the Agreement renders the termination payment provision unenforceable. Under Golden's interpretation, the Agreement requires that the University pay an unreasonable and excessive amount of liquidated damages in the event of Golden's termination. Thus, Golden's interpretation renders the Agreement's liquidated-damages provision unenforceable as an unreasonable and excessive penalty. Additionally, the liquidated damages provision is unenforceable because the amount of damages in the event of a breach were reasonably foreseeable to the parties at the time of drafting.

3. As its Third Affirmative Defense, the University states that Golden waived the right to seek additional payment under the Agreement. The University paid and continues to pay Golden in manner consistent with the express terms of the Agreement, all of which Golden has freely and

voluntarily accepted. Thus, Golden's conduct amounts to a free, voluntary, and intentional waiver of his known right to seek additional payment under the Agreement.

4. As its Fourth Affirmative Defense, the University states that Golden should be estopped from pursuing his claim. Consistent with its obligations under the Agreement, the University made - - and Golden accepted - - all termination payments required under the Agreement. Golden had a duty to raise the issue of any allegedly deficient payments and the University reasonably and detrimentally relied on his failure to do so. Thus, Golden should be estopped from pursuing this matter against the University.

5. As its Fifth Affirmative Defense, the University states Golden's claim is barred by the doctrine of laches. Golden's failure to prosecute his claim - - especially in light of the University's monthly termination payments, all of which Golden accepted - - has prejudiced the University.

The University reserves its rights to supplement its Answer and Affirmative Defenses and/or assert any such additional defenses as may become necessary, as the facts and circumstances develop during discovery.

## COUNTERCLAIM FOR DECLARATORY RELIEF

Counter-Plaintiff, University of Miami, Inc. (the "University"), by and through undersigned counsel, alleges as follows:

## NATURE OF THE COUNTERCLAIM

1. This is a Counterclaim for Declaratory Relief regarding the interpretation of a contract between the University and Counter-Defendant, Alfred J. Golden, Jr. ("Golden"). Specifically, the University seeks declaratory relief regarding the interpretation of a contractual provision governing payment to Golden in the event of his early termination.

## THE PARTIES, JURISDICTION, AND VENUE

2. The University is a not-for-profit corporation duly organized under the laws of the State of Florida with its principal place of business located in Miami-Dade County, Florida.

3. Golden purports to be a resident of New Jersey.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there appears to be complete diversity of citizenship between the parties and the amount in alleged controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

5. Under 28 U.S.C. § 1391, venue properly is laid in the Miami-Dade Division of the Southern District of Florida because all events or omissions allegedly giving rise to the claim occurred in Miami-Dade County, Florida.

## FACTUAL BACKGROUND

6. The University hired Golden as its Head Football Coach in or about December 2010. Thereafter, the parties executed Golden's Employment Agreement (the "Agreement") on or about April 28, 2011, for a definite term of five years (the "Term").

7. The Agreement provided that the University reserves the right to terminate Golden at any time. However, in the event of Golden's early termination, the University was obligated to pay an amount determined using the following formula: $250,000 * (number of years left in the Term) (the "Formula"). The Agreement is attached hereto as Exhibit "A."

8. Consistent with this formulaic approach, the Agreement also included the following provision: "If Mr. Golden is terminated in the middle of the contract year, the amount due for that particular year will be prorated to reflect the months left for such a particular contract year." *See* Ex. A, page 8.

9. The Agreement's First Amendment took effect February 1, 2012, and, among other things, altered the University's obligations to Golden. For example, the First Amendment extended the Term from five to ten years, increased Golden's base-salary by $120,000 and increased Golden's retention bonuses. The First Amendment also adjusted the Formula as follows: $500,000 * (number of years remaining in the Term). Thus, the University increased its exposure in the event of Golden's early termination due to the Agreement's longer term (from five to ten years) and increased the base amount in the Formula (i.e., from $250,000 to $500,000). The First Amendment is attached hereto as Exhibit "B."

10. The First Amendment retained the prorated damages provision as provided above. *See* Ex. B, page 7.

11. The Agreement's Second Amendment took effect August 1, 2012. It altered the timing of payments made under a Guarantee Agreement between the parties and did not alter the rights or obligations of the parties regarding Golden's termination payments. The Second Amendment is attached hereto as Exhibit "C."

12. The Agreement's Third Amendment took effect February 1, 2013. Unlike the previous Amendments, the Third Amendment substantially altered Golden's pay structure, retention bonuses and termination payment calculation. The Third Amendment is attached hereto as Exhibit "D." For example, the University agreed to increase Golden's salary by $565,000 per year for the seven remaining years in the term (a total salary increase of $3,955,000). Further, the University agreed to increase Golden's retention bonuses - - payable in 2016 and 2020, should Golden remain employed with the University - - from $900,000 to $1,275,000 and $2,000,000, respectively (a total retention bonus increase of $1,475,000). The Third Amendment also removed the proration upon early termination language as the parties moved into a set schedule of payments upon early

termination that would eliminate the need for proration calculations. *Compare* Ex. A, page 8 and Ex. B, page 7 with Ex. D, page 4.

13. In consideration of the substantial increase of his compensation, Golden agreed to reduced early termination payment amounts and to a simplified approach to calculating an early termination pay out. Unlike the First Amendment, the Third Amendment adopted a set schedule of termination payments (the "Schedule") that detailed the amount owed to Golden should his employment be terminated early. The Schedule provides as follows:

> If the University terminates Mr. Golden prior to expiration of the Term, he will nevertheless be paid by the University a sum (the "Termination Payment") equal to the following formula:

| Year 3 [February 1, 2013 – January 31, 2014] | $2 million |
| Year 4 [February 1, 2014 – January 31, 2015] | $2 million |
| Year 5 [February 1, 2015 – January 31, 2016] | $2 million |
| Year 6 [February 1, 2016 – January 31, 2017] | $1 million |
| Year 7 [February 1, 2017 – January 31, 2018] | $1 million |
| Year 8 [February 1, 2018 – January 31, 2019] | $1 million |
| Year 9 [February 1, 2019 – January 31, 2020] | $1 million |

*See* Ex. D, pages 3-4.

14. The Third Amendment further provides that any termination payment is payable "by the University to Mr. Golden in equal monthly installments . . . ." *See* Ex. D, page 5.

15. Additionally, "the University's obligation to [make termination payments] is subject to Mr. Golden's duty to mitigate [his damages]." Thus, if Golden became employed in certain specified fields, the termination payments "shall be reduced on a monthly basis by an amount equal to Mr. Golden's annual gross base salary paid for such month under Mr. Golden's new employment agreement until the expiration of the Term . . . ." *See* Ex. D, page 5.

16. On October 25, 2015, the University terminated Golden.

17. Pursuant to the Agreement, as amended, Golden was entitled to a $2 million termination payment (the corresponding amount for early termination in Term Year 5), payable over 51 months (the length of time remaining in the Term). Thus, Golden was entitled to $39,215.69 ($2,000,000 divided by 51 months) in monthly termination payments.

18. From November 1, 2015 through January 31, 2016, the University made - - and Golden accepted - - monthly termination payments of $39,215.69, totaling $117,647.10.

19. Beginning February 1, 2016, Golden earned a monthly salary of $31,250 from the National Football League's Detroit Lions. Thus, in light of Golden's mitigation, the University reduced its monthly termination payment to $7,965.69 ($39,215.69 less $31,250). Accordingly, the University made - - and Golden accepted - - monthly termination payments of $7,965.69 through January 31, 2017, totaling $95,588.24.

20. Beginning February 1, 2017, Golden earned a monthly salary of $33,333 from the National Football League's Detroit Lions. Thus, in light of Golden's mitigation, the University reduced its monthly termination payments to $5,882.36 ($39,215.69 less $33,333). Accordingly, the University made - - and Golden accepted - - monthly termination payments of $5,882.36. Since February 1, 2017, the University has continued to make monthly termination payments in a manner consistent with its obligations under the Agreement, as amended.

21. To date, the University has paid - - and Golden has accepted - - $336,764.94 in termination payments. This amount complies with the University's obligations under the Agreement, as amended.

22. Despite its compliance with the clear and express terms of the Agreement, the University presently is in doubt regarding its rights and obligations under the Agreement due to a present, actual and bona fide dispute between itself and Golden.

23. While receiving substantial termination payments under the Agreement, Golden has made a series of threats and demands seeking additional compensation in conflict with the terms of the Agreement. Those threats and demands culminated in the filing of the instant lawsuit by Golden.

24. There presently exists an actual and bona fide dispute between the parties that puts the University in doubt as to its rights and obligations under the Agreement.

## COUNT I
### (Claim for Declaratory Judgment)

25. The University reincorporates by reference herein the allegations contained within paragraphs 1 through 25 above.

26. The University and Golden entered into a valid and binding contract (the "Agreement").

27. The Agreement specifies the amount of termination payments the University shall to pay to Golden in the event of his early termination.

28. Because the University terminated Golden on October 25, 2015 (in Term Year 5), Golden was entitled to a $2,000,000 termination payment (the corresponding amount for early termination in Term Year 5 as set forth in the Schedule), payable over 51 months (the length of time remaining in the Term).

29. Despite the Agreement's express terms, Golden's repeated threats and demands - - culminating in the present litigation - - have put the University in doubt as to its rights and obligations under the Agreement with respect to the amount of termination payments owed to Golden.

30. Thus, there exists a present, actual and bona fide controversy between the University and Golden as the interested parties to the contract and this dispute.

31. In light of this controversy, there is a present, actual and bona fide need for a declaration of the parties' rights and obligations under the Agreement.

WHEREFORE, the University of Miami, Inc., requests the entry of judgment declaring that the University's obligation to Golden upon early termination on October 25, 2015, was to pay the sum of $2,000,000.00 in equal monthly installments over a 51 month period, reduced by the amounts earned by Golden on a monthly basis as a coach in the National Football League, and no more.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Eric D. Isicoff
Eric D. Isicoff
Florida Bar No. 372201
Isicoff@irlaw.com
Teresa Ragatz
Florida Bar No. 545170
Ragatz@irlaw.com
Christopher A. Ajizian
Florida Bar No. 1010170
Ajizian@irlaw.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served via e-mail this 15th day of November, 2018, upon the following:

| | |
|---|---|
| Richard D. Tuschman | Mark J. Beutler |
| Richard D. Tuschman, P.A. | Law Offices of Mark J. Beutler, P.A. |
| 8551 W. Sunshine Boulevard, Suite 303 | One Datran Center |
| Plantation, Florida 33322 | 9100 South Dadeland Boulevard, Suite 1500 |
| Telephone: (954) 369-1050 | Miami, Florida 33156 |
| Fax: (954) 380-8938. | Telephone: (786) 497-7710 |
| Email:  rtuschman@gtemploymentlawyers.com | Fax: (786) 513-4651 |
| assistant@gtemploymentlawyers.com | Email:  mjb@mjbpa.com |
| | mwooduk@mjbpa.com |

By: /s/ Eric D. Isicoff
　　　Eric D. Isicoff